UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF NEW YORK

---

Nationstar Mortgage LLC,

                            Plaintiff,

            -against-

Thomas McCarthy; Mayra Ortega; Helen Christian Reda,
"JOHN DOE", said name being fictitious, it being the
intention of Plaintiff to designate any and all occupants of
premises being foreclosed herein, and any parties,
corporations or entities, if any, having or claiming an interest
or lien upon the mortgaged premises,
                            Defendants.

Civil Action No. _16-cv-306 3_

COMPLAINT

---

The Plaintiff herein, by its Attorneys, Shapiro, DiCaro & Barak, LLC, complains of the

Defendants above named, and for its cause of action, alleges that:

## INTRODUCTION

First:                          This action is brought pursuant to New York Real Property

Actions and Proceedings Law (RPAPL) Article 13, to foreclose a mortgage encumbering 31

Brookhaven Drive, Rocky Point, NY 11778, the County of Suffolk and the State of New York,

together with the land, buildings, and other improvements located on the premises ("mortgaged

premises").

## PARTIES

Second:                          Plaintiff, at all times herein mentioned, was and still is a duly

authorized Limited Liability Company having its principal place of business at 8950 Cypress

Waters Blvd, Coppell, Texas 75019. Plaintiff is owned by two Delaware Limited Liability

Companies, which are directly owned by one Delaware Corporation.

<u>Third:</u>                      Defendant, Thomas McCarthy, is a citizen of New York, and the owner of the property.

<u>Fourth:</u>                    Defendant, Mayra Ortega, is a citizen of New York, and the owner of the property.

<u>Fifth:</u>                      Defendant, Helen Christian Reda, is a citizen of New York.

<u>Sixth:</u>                     Defendants, John Doe(s), the names of whom are unknown to Plaintiff, are citizens of New York, tenants, occupants, persons or cooperation's, heirs at law, distributees, executors, administrators, trustees, guardians, assignees, creditors or successors whose interest or lien is either subordinate to Plaintiff's Mortgage, paid in full, equitably subordinated, or adverse to Plaintiff's mortgage.

<u>Seventh:</u>                 The Defendants set forth in Schedule "A" reside or have a place of business at the address set forth therein and are made Defendants in this action in the capacities therein alleged, and for the purpose of foreclosing and extinguishing any other right, title or interest said Defendants may have in the subject premises.

<u>Eighth:</u>                   The United States of America, The People of the State of New York, The State Tax Commission of the State of New York, the Industrial Commissioner of the State of New York and all other agencies or instrumentalities of the Federal, State or local government (by whatever name designated) if made parties to this action and if appearing in Schedule "B", are made parties solely by reason of the interest set forth in Schedule "B" and for no other reason.

## STATEMENT OF JURISDICTION

Ninth:                            Federal subject matter jurisdiction exists pursuant to 28 USC

Section 1332 because complete diversity exists among the Defendants and the amount in

controversy, without interest and costs, exceeds $75,000.00.

## VENUE

Tenth:                            Venue is proper pursuant to 28 USC Section 1391 because the

property is located in this District and a substantial part of the events and omissions giving rise to

this action occurred in this district.

## FACTUAL HISTORY

Eleventh:                         Heretofore, the Defendant(s) Thomas McCarthy and Mayra

Ortega, for the purpose of securing to GreenPoint Mortgage Funding, Inc., its successors and

assigns, the sum of $310,000.00, duly made a certain bond, note, consolidation, extension,

modification, recasting, or assumption agreement, as the case may be, wherein and whereby they

bound themselves, their heirs, executors, administrators and assigns, and each and every one of

them, jointly and severally, in the amount of said sum of money, all as more fully appears

together with the terms of repayment of said sum or rights of GreenPoint Mortgage Funding,

Inc., its successors and assigns, in said bond, note or other instrument, a copy of which is

attached hereto and made a part hereof.

Twelfth:                          As security for the payment of said indebtedness, a mortgage was

executed, acknowledged and delivered to Mortgage Electronic Registration Systems, Inc., as

nominee for GreenPoint Mortgage Funding, Inc., recorded in the Suffolk County Clerk's Office

on November 8, 2006, in Liber M00021414 of Mortgages, page 819, wherein and whereby the mortgagor(s) named therein mortgaged, bargained, granted an interest in and/or sold to the mortgagee, its successors and assigns, the premises more particularly described therein, hereinafter called "mortgaged premises", under certain conditions with rights, duties and privileges between or among them as more fully appears in said mortgage, a copy of which is attached hereto and made a part hereof.

  <u>Thirteenth:</u>   Plaintiff is the current owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note.  If Plaintiff is not the original owner and holder of the subject note and mortgage, then information regarding the chain of title will be contained in Schedule "D".

  <u>Fourteenth:</u>   The said mortgage was duly recorded and the mortgage tax due thereon was duly paid on the recorded instrument in the proper County Clerk's Office at the place and time which appears thereon.

  <u>Fifteenth:</u>   The Defendant(s), Thomas McCarthy and Mayra Ortega, so named, have failed and neglected to comply with the conditions of said mortgage, bond or note by omitting and failing to pay the monthly payments of principal, interest, taxes, assessments, water rates, insurance premiums, escrow and/or other charges, and accordingly, the plaintiff has duly elected and does hereby elect to call due the entire amount presently secured by the mortgage described in paragraph "TWELFTH" hereof.

  <u>Sixteenth:</u>   Heretofore and prior to the commencement of this action, part of the original principal sum may have been paid to apply on said indebtedness, and there remains due the amount set forth in Schedule "C".

Seventeenth:                In order to protect its security, Plaintiff has paid, or will pay, as may be compelled during the pendency of this action, local taxes, assessments, water rates, insurance premiums, inspections and other charges affecting the mortgaged premises, and Plaintiff requests that any sums thus paid by it for said purposes (together with interests thereon) should be added to the sum otherwise due and be deemed secured by the said mortgage and be adjudged a valid lien on the mortgaged premises, the amount of which will ultimately be determined by the Court.

Eighteenth:                The Defendants herein have, or claim to have, some interest in or lien upon, said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to, has been paid, or is otherwise subordinate to, the lien of Plaintiff's mortgage.

Nineteenth:                There are no pending proceedings at law or otherwise to collect or enforce said bond/note and mortgage and there is no other action pending which has been brought to recover said mortgage debt or any part thereof.

Twentieth:                The Schedules, Exhibits and other items attached to this Complaint, wherever reference has been made to each or any of them, are expressly incorporated and made a part of this Complaint for all purposes with the same force and effect as if they were completely and fully set forth herein.

Twenty-first:                By reason of the foregoing, there is now due and owing to the plaintiff upon said bond, note, assumption agreement, consolidation agreement, or recasting agreement, the unpaid principal balance set forth in Schedule "C", and such other fees, costs, late charges, and interest, the amount of which will be determined by the Court.

Twenty-second:        The mortgage provides that, in the case of foreclosure, the mortgaged premises may be sold in one parcel.

Twenty-third:        Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment or performance, after the date of the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, and all present and future defaults under the Note and Mortgage and occurring prior to the discontinuance of this action, are fully paid and cured.

Twenty-fourth:        Pursuant to the Fair Debt Collection Practices Act, this action may be deemed to be an attempt to collect a debt, on behalf of Plaintiff.  Any information obtained as a result of this action will be used for that purpose.

Twenty-fifth:        If the subject note and mortgage fall within the prescribed definition of a subprime home loan or high-cost home loan as identified under section six-l or six-m of the New York State Banking Law, then Plaintiff has complied with all the provisions of section five-hundred ninety-five of the New York State Banking Law and any rules and regulations promulgated thereunder, section six-l or six-m of the New York State Banking Law and section thirteen hundred four of New York State Real Property Actions and Proceedings Law (RPAPL).

Twenty-sixth:        Plaintiff has complied with the provisions of RPAPL § 1306, by filing the form required by the superintendent of financial services within three business days of mailing the RPAPL § 1304 notice, as evinced by the Proof of Filing Statement issued by the New York State Department of Financial Services f/k/a New York State Banking Department; a copy of the Proof of Filing Statement is attached hereto and made a part hereof.

Twenty-seventh:        To the extent the original obligation was discharged in bankruptcy under Title 11 of the United States Code, this pleading does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, the secured party retains all rights, and hereby exercises its right to foreclose its lien, under its security instrument.

**WHEREFORE**, plaintiff demands judgment:

(a)    Adjudging and decreeing the amounts due the plaintiff for principal, interest, costs, and reasonable attorney's fees, if and as provided for in the said mortgage;

(b)    That the Defendants and all persons claiming by, through or under them, or either or any of them, subsequent to the commencement of this action and every other person or corporation whose right, title conveyance or encumbrance is subsequent to or subsequently recorded, may be barred and forever foreclosed of all right, claim, lien, or interest, or equity of redemption in and to said mortgaged premises;

(c)    That the said mortgaged premises, or such part thereof as may be necessary to raise the amounts then due for principal, interest, costs, reasonable attorney's fees, allowances and disbursements, together with any monies advanced and paid, may be decreed to be sold according to law;

(d)    That out of the monies arising from the sale thereof, the plaintiff may be paid the amounts then due on said bond/note and mortgage and any sum which may have been paid by the plaintiff to protect the lien of plaintiff's mortgage as herein set forth, with interest upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, additional allowance, if any, and reasonable attorney's fees, if and as provided for in

the mortgage, rider or other agreement, so far as the amount of such money properly applicable thereto will pay the same;

(e)     That either or any of the parties to this action may become a purchaser upon such sale;

(f)     That this Court forthwith appoint a Receiver of the rents and profits of said premises with the usual powers and duties;

(g)     That the Defendant(s), Thomas McCarthy and Mayra Ortega, <u>unless discharged in bankruptcy</u> may be adjudged to pay any deficiency that may remain after applying all of said monies so applicable thereto;

(h)     That the United States of America shall have the right of redemption, if applicable;

(i)     That the plaintiff may have such other or further relief, or both, in the premises as may be just and equitable.

Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of subject premises by virtue of its position as a judgment or other lien creditor excluding the mortgage being foreclosed herein.

Dated: ____4/22/16____

John A. DiCaro, Esq.
Managing Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380
JDicaro@logs.com
Our File No. 16-050891

## SCHEDULE A – DEFENDANTS

| DEFENDANTS | CAPACITY |
|---|---|
| Thomas McCarthy<br>31 Brookhaven Drive<br>Rocky Point, NY 11778 | Owner of record and original obligor under the Note secured by the Mortgage recorded on November 8, 2006, in Liber M00021414 of Mortgages, page 819, being foreclosed herein. |
| Mayra Ortega<br>31 Brookhaven Drive<br>Rocky Point, NY 11778 | Owner of record and original obligor under the Note secured by the Mortgage recorded on November 8, 2006, in Liber M00021414 of Mortgages, page 819, being foreclosed herein. |
| Helen Christian Reda<br>86 28 Eliot Avenue<br>Rego Park, NY 11374 | Judgment creditor by virtue of a Suffolk County Court judgment filed on March 17, 2009 for $8,890.00 vs. Mayra Ortega. Attorney: Stephen Feder. |
| "JOHN DOE" | Said name being fictitious, it being the intention of Plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein. |

16-050891

## **SCHEDULE B – DEFENDANTS**

NONE

## SCHEDULE C

### MORTGAGE INFORMATION

| | | |
|---|---|---|
| 1. | Original Amount of Bond/Note/<br>    Consolidation or Modification Agreement | $310,000.00 |
| 2. | Last installment due and paid | February 1, 2008 |
| 3. | Date of first unpaid installment/<br>    default date | March 1, 2008 |

### AMOUNT DUE

| | | |
|---|---|---|
| 4. | Principal balance owing | $305,315.41 |
| 5. | *Interest @ 6.125%<br>from February 1, 2008 | To Be Calculated at Judgment |
| 6. | Late charges as per the terms of the Note | To Be Calculated at Judgment |
| 7. | Taxes Advanced by Plaintiff | To Be Calculated at Judgment |
| 8. | Escrow Advances | To Be Calculated at Judgment |

*Interest will continue to accrue at the contract bond/note/loan agreement rate, until a Judgment of Foreclosure and Sale has been entered in the proper County Clerk's Office, at which time the interest rate will be calculated at the legal rate of 9.00%.*

16-050891

## SCHEDULE D

The instrument being foreclosed herein is a Mortgage dated October 20, 2006, executed by Thomas McCarthy and Mayra Ortega, as Mortgagor(s) to Mortgage Electronic Registration Systems, Inc., as nominee for GreenPoint Mortgage Funding, Inc., as Mortgagee, to secure the sum of $310,000.00, and recorded in the Suffolk County Clerk's Office on November 8, 2006, at Liber M00021414 of Mortgages, page 819.   The Note and Mortgage were transferred from Mortgage Electronic Registration Systems, Inc., as nominee for GreenPoint Mortgage Funding, Inc. to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, and said transfer was memorialized by an Assignment of Mortgage executed on February 15, 2012 and recorded March 3, 2012 in Liber M00022178 of Mortgages, page 417.   The Note and Mortgage were subsequently transferred to Nationstar Mortgage, LLC and said transfer was memorialized by an Assignment of Mortgage executed on September 17, 2013 and recorded December 30, 2013 in Liber M00022443 of Mortgages, page 585.

In addition, the underlying Note was indorsed by the original lender or its agent, successor, or assign, and was delivered to Plaintiff prior to the commencement of this action.

16-050891







## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: DEEDS/DDD
Number of Pages: 4
Receipt Number : 06-0108373
TRANSFER TAX NUMBER: 06-12125

Recorded:      11/08/2006
At:            01:35:11 PM

LIBER:    D00012477
PAGE:     654

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0200 | 074.00 | 06.00 | 015.000 |

EXAMINED AND CHARGED AS FOLLOWS

Deed Amount:            $335,000.00

Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $12.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| EA-CTY | $5.00 | NO | EA-STATE | $75.00 | NO |
| TP-584 | $5.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $30.00 | NO | SCTM | $0.00 | NO |
| Transfer tax | $1,340.00 | NO | | | |
| | | | Fees Paid | $1,492.00 | |

TRANSFER TAX NUMBER: 06-12125

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

Judith A. Pascale
County Clerk, Suffolk County

| | | 1 | 2 | |
|---|---|---|---|---|

Number of pages  **4**

**TORRENS**

Serial # _____

Certificate # _____

Prior Ctf. # _____

RECORDED
2006 Nov 08 01:35:11 PM
Judith A. Pascale
CLERK OF
SUFFOLK COUNTY
L C00012477
P 654
DT# 06-12125

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**3**        **FEES**

| | | |
|---|---|---|
| Page / Filing Fee | _____ | |
| Handling | 5. 00 | |
| TP-584 | _____ | |
| Notation | _____ | |
| EA-52 17 (County) | _____ | Sub Total _____ |
| EA-5217 (State) | _____ | |
| R.P.T.S.A. | 70 | |
| Comm. of Ed. | 5. 00 | |
| Affidavit | _____ | |
| Certified Copy | _____ | |
| NYS Surcharge | 15. 00 | Sub Total _____ |
| Other | _____ | |
| | Grand Total | 152 |

Mortgage Amt. _____
1. Basic Tax _____
2. Additional Tax _____
Sub Total _____
Spec./Asst.
or
Spec./Add.
TOT. MTG. TAX _____
Dual Town _____ Dual County _____
Held for Appointment
Transfer Tax  **1,340**
Mansion Tax

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES _____ or NO _____

If NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist. 0200 | Section 074.00 | Block 06.00 | Lot 015.000 | 5 | Community Preservation Fund |
|---|---|---|---|---|---|---|

Real Property Tax Service Agency Verification
**06037920** 0200 07400 0600 015000
R P T S A
BSI
01-NOV-06

Consideration Amount $ _____

CPF Tax Due   $ _____

Improved _____
Vacant Land _____
TD _____
TD _____
TD _____

**6**   Satisfactions/Discharges/Releases List Property Owners Mailing Address
**RECORD & RETURN TO:**

MANUEL TAVERAS, ESQ.
98·11 ROOSEVELT AVE.
CORONA, N.Y. 11368

| 7 | Title Company Information |
|---|---|
| Co. Name | MACGREGOR ABSTRACT |
| Title # | S 21025 |

**8**   # Suffolk County Recording & Endorsement Page

This page forms part of the attached  **DEED**    made by:
(SPECIFY TYPE OF INSTRUMENT)

LAWRENCE J. CAVANAUGH +
JENNIFER CAVANAUGH

The premises herein is situated in SUFFOLK COUNTY, NEW YORK.

TO

THOMAS McCARTHY +
MAYRA ORTEGA

In the Township of  **BROOKHAVEN**
In the VILLAGE _____
or HAMLET of  **Rocky Point**

**BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.**

## IMPORTANT NOTICE

If the document you've just recorded is your <u>SATISFACTION OF MORTGAGE</u>, please be aware of the following:

<u>If a portion of your monthly mortgage payment included your property taxes, you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.</u>

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

Please contact your local Town Tax Receiver with any questions regarding property tax payment.

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770 .

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

*Judith A. Pascale*

Judith A. Pascale
Suffolk County Clerk

dw
2/99

# S 21025

9.

Conv. Tax
$ 1340.00

D. 0200
S. 074.00
B. 06.00
L. 015.000

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made as of the 20TH day of OCTOBER, 2008,

BETWEEN

LAWRENCE J. CAVANAUGH and JENNIFER  CAVANAUGH
31 Brookhaven Drive, Rocky Point, New York 11778
party of the first part, and

THOMAS McCARTHY and MAYRA ORTEGA , AS JOINT TENANTS
6654 69TH Street, Middle Village, New York 11379
party of the second part,

WITNESSETH, that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

SEE ATTACHED SCHEDULE A DESCRIPTION

PREMISES ALSO KNOWN AS 31 BROOKHAVEN DRIVE, ROCKY POINT, NEW YORK 11778

DISTRICT: 0200 SECTION: 074.00  BLOCK: 06.00  LOT: 015.000

BEING AND INTENDED TO BE THE SAME PREMISES ACQUIRED BY DEED DATED SEPTEMBER 2, 2003 AND RECORDED ON FEBRUARY 2, 2005 IN LIBER 12369 PAGE 302.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" when ever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.
IN PRESENCE OF:

_____          _____
                                                   LAWRENCE J. CAVANAUGH

                                                   _____
                                                   JENNIFER  CAVANAUGH

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

State of New York, County of  SUFFOLK              ss.:

State of New York, County of SUFFOLK              ss.:

On the  20TH  day of OCTOBER  in the year 2006
before me, the undersigned, personally appeared

On the  20TH  day of OCTOBER      in the year  2006
before me, the undersigned, personally appeared

the basis of satisfactory evidence to be the individual(s) whose
name(s) is (are) subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their signature(s)
on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

_____
(signature and office of individual taking acknowledgment)

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State OF , CONNECTICUT              COUNTY OF  FAIRFIELD                                   ss:
                                                                                                                          Stratford

On the  19   day of OCTOBER      in the year 2005 2006     before me, the undersigned, personally appeared
LAWRENCE J. CAVANAUGH and JENNIFER CAVANAUGH
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s)  is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

Stratford                                    in   Connecticut
_____                    _____
(insert the City or other political subdivision)         (and insert the State or Country or other place the acknowledgment was taken)

Debra A. Cole
_____
(signature and office of individual taking acknowledgment)
Debra A. Cole
My Commission Expires 6-30-11

**BARGAIN AND SALE DEED**
WITH COVENANT AGAINST GRANTOR'S ACTS

Title No.  S 21025
Cavanaugh & Cavanaugh
**TO**
McCarthy & Ortega

SECTION  074.00
BLOCK  06.00
LOT  015.000
COUNTY OR TOWN  Rocky Point
STREET ADDRESS  31 Brookhaven Dr., Rocky Point
                                                                                    N.Y.

Recorded at Request of

| RETURN BY MAIL TO: |
|---|
| Manuel Taveras, Esq.<br>98-11 Roosevelt Ave.,<br>Corona, N.Y. 11368 |

# MACGREGOR ABSTRACT CORP.

## Title No. S21025  (54902967)

## S C H E D U L E   A

**AMENDED 10/19/06**

ALL that certain plot, piece or parcel of land, with the building and improvements thereon erected, situate, lying and being at Rocky Point in the Town of Brookhaven, County of Suffolk and State of New York, and designated as part of Lots 48, 49, 50, 51 and 52 on a certain map entitled, "Map of Sound Beach Annex" and filed in the Suffolk County Clerk's Office on September 24, 1935 as Map 1194 and bounded and described as follows:

BEGINNING at a point on the northerly side of Larch Road said point being the extreme easterly end of a curve which connects the northerly side of Larch Road with the new easterly side of Brookhaven Drive, which curve has a radius of 20.00 feet and a length of 27.81 feet;

RUNNING THENCE South 82 degrees 00 minutes 30 seconds East along the northerly side of Larch Road, 53.83 feet;

THENCE North 3 degrees 10 minutes 00 seconds East a distance of 100.36 feet to the lands now formerly of L.I.P.A.;

THENCE North 82 degrees 00 minutes 30 seconds West along said last mentioned lands 80.28 feet to the new easterly side of Brookhaven Drive;

THENCE South 2 degrees 20 minutes 00 seconds East along the new easterly side of Brookhaven Drive 84.96 feet to the extreme northerly end of a curve as first above mentioned which connects the new easterly side of Brookhaven Drive with the northerly side of Larch Road;

THENCE Southeasterly along said curve which bears to the left and has a radius of 20.00 feet, a distance of 27.81 feet to the point or place of BEGINNING.

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

**FOR CONVEYANCING ONLY**

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

Page 1

 

# NOTE

October 20, 2006                 Melville                        New York
[Date]                          [City]                           [State]

31 Brookhaven Drive, Rocky Point, NY   11778

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 310,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GreenPoint Mortgage Funding, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.125%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st     day of each month beginning on December 1, 2006     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 1, 2036     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 1093, Branford, CT 06405-8093
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,883.59          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N(NY) (0005)          Form 3283 1/01
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3

 

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15     calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     2.000% of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3233 1/01



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Thomas McCarthy                -Borrower          Mayra Ortega              -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                    -Borrower

*[Sign Original Only]*

4/3/2012 5:30:49 PM   PAGE   63/069   888-294-5658

WITHOUT RECOURSE
PAY TO THE ORDER OF:
            Countrywide Bank, N.A.

GreenPoint Mortgage Funding, Inc.

Thomas K. Mitchell
Vice President

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF
Countrywide Home Loans, Inc.
WITHOUT RECOURSE
—— COUNTRYWIDE BANK, N.A.

BY: _____
ADERAM HIGHA
MEDIA [illegible]
COLLATERAL PROCESSING OFFICER





## SUFFOLK COUNTY CLERK
## RECORDS OFFICE
## RECORDING PAGE

Type of Instrument: MORTGAGE/MMM          Recorded:    11/08/2006
Number of Pages: 21                       At:          01:35:11 PM
Receipt Number : 06-0108373
MORTGAGE NUMBER: CX075837                 LIBER:       M00021414
                                          PAGE:        819

District:        Section:        Block:              Lot:
0200             074.00          06.00               015.000
                 EXAMINED AND CHARGED AS FOLLOWS
Mortgage Amount:          $310,000.00

Received the Following Fees For Above Instrument
                               Exempt                        Exempt
  Page/Filing      $63.00      NO    Handling      $5.00     NO
  COE              $5.00       NO    NYS SRCHG      $15.00    NO
  Affidavit        $0.00       NO    Cert.Copies    $0.00     NO
  RPT              $30.00      NO    SCTM           $0.00     NO
  Mort.Basic       $1,550.00   NO    Mort.Addl      $900.00   NO
  Mort.SplAddl     $0.00       NO    Mort.SplAsst   $775.00   NO
                                     Fees Paid      $3,343.00

MORTGAGE NUMBER: CX075837
                 THIS PAGE IS A PART OF THE INSTRUMENT
                       THIS IS NOT A BILL

                       Judith A. Pascale
                       County Clerk, Suffolk County

| 1 | 2 | 15 |

Number of pages _2.1_

**TORRENS**

Serial # _____

Certificate # _____

Prior Ctf. # _____

RECORDED
2006 Nov 08 01:35:11 PM
Judith A. Pascale
CLERK OF
SUFFOLK COUNTY
L M00021414
P 819
CX075837

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

| 3 | FEES | |
|---|---|---|
| Page / Filing Fee | _____ | |
| Handling | 5. 00 | |
| TP-584 | _____ | |
| Notation | _____ | |
| EA-52 17 (County) | Sub Total _____ | |
| EA-5217 (State) | _____ | |
| R.P.T.S.A. | 30 | |
| Comm. of Ed. | 5. 00 | |
| Affidavit | _____ | |
| Certified Copy | _____ | |
| NYS Surcharge | 15. 00 | Sub Total _____ |
| Other | _____ | Grand Total 118 |

Mortgage Amt. 310,000

1. Basic Tax _____
2. Additional Tax _____
Sub Total _____
Spec./Assit.
or
Spec. /Add. _____
TOT. MTG. TAX 3,245
Dual Town _____ Dual County _____
Held for Appointment _____
Transfer Tax _____
Mansion Tax _____

The property covered by this mortgage is or will be improved by a one or two family dwelling only.

YES _X_ or NO _____

If NO, see appropriate tax clause on page # _____ of this instrument.

DM

| 4 | Dist. 0200 | Section 074.00 | Block 06.00 | Lot 015.000 |
|---|---|---|---|---|
| | | 0200 07400 0600 015000 | | |

Real Property
Tax Service
Agency
Verification

P T S
R 881 A
01-NOV-06

| 5 | **Community Preservation Fund** |
|---|---|
| Consideration Amount $ _____ | |
| CPF Tax Due | $ _____ |
| Improved | _____ |
| Vacant Land | _____ |
| TD | _____ |
| TD | _____ |
| TD | _____ |

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address **RECORD & RETURN TO:** |
|---|---|

GREENPOINT MORTGAGE FUNDING, INC.
981 AIRWAY COURT, SUITE E
SANTA ROSA, CA 95403-2049

| 7 | **Title Company Information** |
|---|---|
| Co. Name MACGREGOR ABSTRACT | |
| Title # S 21025 | |

## 8  Suffolk County Recording & Endorsement Page

This page forms part of the attached _Mortgage_ made by:
(SPECIFY TYPE OF INSTRUMENT)

_Thomas M'Carthy & Mayra Ortega_

TO

_GREENPOINT MORTGAGE FUNDING, INC._

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

In the Township of _Brookhaven_
In the VILLAGE
or HAMLET of _Rocky Point_

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

## IMPORTANT NOTICE

If the document you've just recorded is your <u>SATISFACTION OF MORTGAGE</u>, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, <u>you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.</u>

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

Please contact your local Town Tax Receiver with any questions regarding property tax payment.

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale
Suffolk County Clerk

dw
2/99

#S 21025
MORT. TAX # 3225.00

D. 0200
S. 074.00
B. 06.00
L. 015.000

Return To:
GreenPoint Mortgage
Funding, Inc.
981 Airway Court, Suite E
Santa Rosa, CA 95403-2049

Prepared By:
GreenPoint Mortgage
Funding, Inc.
100 Wood Hollow Drive,
Novato, CA 94945

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE MIN ▮▮▮▮▮▮▮▮▮

## WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated October 20, 2006
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." Thomas McCarthy and Mayra Ortega

whose address is 66-54 69th Street APT 2FL, Middle Village, NY 11379

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of 4318 Miller Road,
Flint, MI 48501-2026, tel. (888) 679-MERS FOR PURPOSES OF RECORDING THIS MORTGAGE
MERS IS THE MORTAGE OF RECORD.
(D) "Lender." GreenPoint Mortgage Funding, Inc.

will be called "Lender." Lender is a corporation or association which exists under the laws of
the State of New York            . Lender's address is 100 Wood Hollow Drive,
Novato, CA 94945

▮▮▮▮▮▮

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3033 1/01

VMP -6A(NY) (0508)
Page 1 of 17
VMP Mortgage Solutions Inc (800)521-7291

(E) "Note." The note signed by Borrower and dated **October 20, 2006**             , will be called the "Note." The Note shows that I owe Lender **three hundred ten thousand and 00/100**

                    Dollars (U.S. **$310,000.00**                    )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by **November 1, 2036**

(F) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |
| ☒ Occupancy Rider | ☐ Interim Interest Rider | |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

-GA(NY) (0508)                    Page 2 of 17                    Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 31 **Brookhaven Drive**

[Street]

**Rocky Point**                          [City, Town or Village], New York 11778      [Zip Code].

This Property is in **Suffolk**                                      County. It has the following legal description:      See **Schedule A attached hereto and made a part hereof.**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;



                        Page 3 of 17                        Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these Items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible, or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance



coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.   Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.



If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If



Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.



BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            Thomas McCarthy                    -Borrower


_____          _____ (Seal)
                                            Mayra Ortega                       -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                             -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                             -Borrower


_____ (Seal)            _____ (Seal)
                         -Borrower                                             -Borrower

STATE OF NEW YORK,                   _SuFFoLK_            County ss:

On the _20ᵗʰ_ day of _OctoBer , 2006_          before me, the undersigned, a notary public in and for said state, personally appeared Thomas McCarthy, Mayra Ortega

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:  Dist: 0200;  Sect: 074.00;  Blk: 06.00;  Lot: 015.000

JOHN C. DILLON
Notary Public, State of New York
No. 01DI5027072
Qualified in Nassau County
Commission Expires May 2, 20_10_



-6A(NY) (0505)                    Page 17 of 17                    Form 3033 1/01

# OCCUPANCY RIDER TO MORTGAGE/
# DEED OF TRUST/SECURITY DEED

THE OCCUPANCY RIDER is made this 20th day of October, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to GreenPoint Mortgage Funding, Inc. (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 31 Brookhaven Drive, Rocky Point, NY 11778

### ("Property Address")

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.  That the above-described property will be personally occupied by the Borrower as their principal residence within 60 days after the execution of the Security Instrument and Borrower shall continue to occupy the property as their principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld.

2.  That if residency is not established as promised above as well as in the Security Instrument, the Lender may, without further notice, take any or all of the following actions:

    a.  increase the interest rate on the Note by one-half of one percent (0.500%) per annum on a fixed-rate loan or increase the Margin on an Adjustable Rate Note by one-half of one percent (0.500%) per annum and to adjust the principal and interest payments to the amount required to pay the loan in full within the remaining term; and/or

    b.  charge a non-owner occupancy rate adjustment fee of two percent (2.00%) of the original principal balance and/or

    c.  require payment to reduce the unpaid principal balance of the loan to the lesser of (1) 70% of the purchase price of the property or (2) 70% of the appraised value at the time the loan was made. The reduction of the unpaid principal balance shall be due and payable within thirty (30) days following receipt of a written demand for payment, and if not paid within thirty (30) days will constitute a default under the terms and provisions of the Note and Security Instrument, and/or

    d.  declare a default under the terms of the Note and Security Instrument and begin foreclosure proceedings, which may result in the sale of the above-described property; and/or

    e.  refer what is believed to be fraudulent acts to the proper authorities for prosecution. It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements or reports for the purpose of influencing in any way the action of the Lender in granting a loan on the above property under the provisions of TITLE 18, UNITED STATES CODE, SECTIONS 1010 AND 1014.

It is further understood and agreed that any forbearance by the Lender in exercising any right or remedy given here, or by applicable law, shall not be a waiver of such right or remedy.

Should any clause, section or part of this Occupancy Rider be held or declared to be void or illegal for any reason, all other clauses, sections or parts of this Occupancy Rider which can be effected without such illegal clause, section or part shall nevertheless continue in full force and effect.

It is further specifically agreed that the Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies set forth above, including but not limited to, reasonable attorney's fees.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Occupancy Rider.

_____ (Borrower)       _____ (Borrower)
Thomas McCarthy                                    Mayra Ortega

_____ (Borrower)       _____ (Borrower)

_____ (Borrower)       _____ (Borrower)

_____ (Borrower)       _____ (Borrower)

# S C H E D U L E  A

**AMENDED 10/19/06**

**ALL** that certain plot, piece or parcel of land, with the building and improvements thereon erected, situate, lying and being at Rocky Point in the Town of Brookhaven, County of Suffolk and State of New York, and designated as part of Lots 48, 49, 50, 51 and 52 on a certain map entitled, "Map of Sound Beach Annex" and filed in the Suffolk County Clerk's Office on September 24, 1935 as Map 1194 and bounded and described as follows:

**BEGINNING** at a point on the northerly side of Larch Road said point being the extreme easterly end of a curve which connects the northerly side of Larch Road with the new easterly side of Brookhaven Drive, which curve has a radius of 20.00 feet and a length of 27.81 feet;

**RUNNING THENCE** South 82 degrees 00 minutes 30 seconds East along the northerly side of Larch Road, 53.83 feet;

**THENCE** North 3 degrees 10 minutes 00 seconds East a distance of 100.36 feet to the lands now formerly of L.I.P.A.;

**THENCE** North 82 degrees 00 minutes 30 seconds West along said last mentioned lands 80.28 feet to the new easterly side of Brookhaven Drive;

**THENCE** South 2 degrees 20 minutes 00 seconds East along the new easterly side of Brookhaven Drive 84.96 feet to the extreme northerly end of a curve as first above mentioned which connects the new easterly side of Brookhaven Drive with the northerly side of Larch Road;

**THENCE** Southeasterly along said curve which bears to the left and has a radius of 20.00 feet, a distance of 27.81 feet to the point or place of **BEGINNING**.









SUFFOLK COUNTY CLERK
RECORDS OFFICE
RECORDING PAGE

| Type of Instrument: ASSIGNMENT OF MORTGAGE | Recorded: | 03/03/2012 |
|---|---|---|
| Number of Pages: 2 | At: | 11:09:24 AM |
| Receipt Number : 12-0025601 | | |

LIBER:    M00022178
PAGE:     417

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0200 | 074.00 | 06.00 | 015.000 |

EXAMINED AND CHARGED AS FOLLOWS

Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $10.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Notation | $0.50 | NO | Cert.Copies | $0.00 | NO |
| RPT | $30.00 | NO | | | |
| | | | Fees Paid | $80.50 | |

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County

| 1 | 2 |

Number of pages 2

```
                          RECORDED
                          2012 Mar 03 11:09:24 AM
                          JUDITH A. PASCALE
                          CLERK OF
                          SUFFOLK COUNTY
                          L M00002178
                          P 417
```

This document will be public record. Please remove all Social Security Numbers prior to recording.

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

| 3 | FEES | | |
|---|---|---|---|
| Page / Filing Fee | _____ | Mortgage Amt. | _____ |
| Handling | 20. 00 | 1. Basic Tax | _____ |
| TP-584 | _____ | 2. Additional Tax | _____ |
| Notation / N | _____ | Sub Total | _____ |
| EA-52 17 (County) | _____ | Spec./Asst. | _____ |
| | Sub Total _____ | or | |
| EA-5217 (State) | 20. 00 | Spec. /Add. | _____ |
| R.P.T.S.A. | _____ | TOT. MTG. TAX | _____ |
| | | Dual Town ____ Dual County ____ | |
| Comm. of Ed. | 5. 00 | Held for Appointment _____ | |
| Affidavit | . | Transfer Tax | _____ |
| Certified Copy | _____ | Mansion Tax | _____ |
| NYS Surcharge | 15. 00 | The property covered by this mortgage is or will be improved by a one or two family dwelling only. | |
| | Sub Total _____ | | |
| Other | _____ | YES _____ or NO _____ | |
| | Grand Total 80 50 | If NO, see appropriate tax clause on page # _____ of this instrument. | |

0200 07400 0600 015000

| 4 | Dist. | | 5 | Community Preservation Fund |
|---|---|---|---|---|
| | P T S R EMC A 29-FEB-12 | | | Consideration Amount $ _____ |
| Real Prop Tax Servic Agency Verificatio.. | | | | CPF Tax Due $ _____ |
| | | | | Improved _____ |
| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address | | | Vacant Land _____ |
| | RECORD & RETURN TO: | | | TD _____ |
| | CoreLogic 450 E. Boundary St. Chapin, SC 29036 | | | TD _____ |
| | | | | TD _____ |

| Mail to: Judith A. Pascale, Suffolk County Clerk 310 Center Drive, Riverhead, NY 11901 www.suffolkcountyny.gov/clerk | 7 | Title Company Information |
|---|---|---|
| | | Co. Name |
| | | Title # 13868846 |

| 8 | **Suffolk County Recording & Endorsement Page** |

This page forms part of the attached _____ Assignment of Mortgage _____ made
by: 
(SPECIFY TYPE OF INSTRUMENT)

Mortgage Electronic Registration, Systems, The premises herein is situated in
In, MS nominee for Greenpoint Mortgage SUFFOLK COUNTY, NEW YORK.
Funding, Inc.
TO                                          In the TOWN of **BROOKHAVEN**

Bank of America, N.A.                        In the VILLAGE
Countrywide Home Loans Servicing LP          or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

## __IMPORTANT NOTICE__

If the document you've just recorded is your <u>SATISFACTION OF MORTGAGE,</u> please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, **you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.**

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

Please contact your local Town Tax Receiver with any questions regarding property tax payment.

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale

Judith A. Pascale
Suffolk County Clerk

dw
2/99

Recording Requested By:
Bank of America
Prepared By: Kathy Oriard
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID#

Property Address:
31 Brookhaven Dr
Rocky Point, NY 11778-9300
Property Location:
Township of BROOKHAVEN

MIN #:                                    MERS Phone #: 888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.
, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is 1901 E Voorhees Street, Suite C, Danville, IL 61834 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP whose address is 8609 WESTWOOD CENTER, VIENNA, VA 22183 all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

Original Lender:     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.
Made By:             THOMAS MCCARTHY AND MAYRA ORTEGA
Date of Mortgage:    10/20/2006
Original Loan Amount: $310,000.00
Section: 074.00   Lot: 015.000   Block: 06.00

Recorded in Suffolk County, NY on: 11/8/2006, book M00021414, page 819 and instrument number CX075837

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
08/15/2012

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC.

By:
Dominique Johnson Assistant Secretary

State of California
County of Ventura

On FEB 15 2012 before me, Deborah L Beard, Notary Public, personally appeared Dominique Johnson, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies); and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Deborah L. Beard          (Seal)
My Commission Expires: June 26, 2013

DEBORAH L. BEARD
Commission # 1853913
Notary Public - California
Ventura County
My Comm. Expires Jun 26, 2013







SUFFOLK COUNTY CLERK
RECORDS OFFICE
RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE
Number of Pages: 3
Receipt Number : 13-0166802

Recorded:     12/30/2013
At:           12:31:26 PM

LIBER:     M00022443
PAGE:      585

| District: | Section: | Block: | Lot: |
|-----------|----------|--------|------|
| 0200 | 074.00 | 06.00 | 015.000 |

EXAMINED AND CHARGED AS FOLLOWS
Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $15.00 | NO | Handling | $20.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Notation | $1.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $60.00 | NO | | | |
| | | | Fees Paid | $116.00 | |

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County

| 1 | 2 |

| Number of pages | 3 |

RECORDED
2013 Dec 30 12:31:26 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00022443
P 585

This document will be public record. Please remove all Social Security Numbers prior to recording.

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |

| 3 | FEES |

| Page / Filing Fee | _____ |
| Handling | 20. 00 |
| TP-584 | |
| Notation | 2N   100 |
| EA-52 17 (County) | _____   Sub Total _____ |
| EA-5217 (State) | |
| R.P.T.S.A. | 60 |
| Comm. of Ed. | 5. 00 |
| Affidavit | |
| Certified Copy | |
| NYS Surcharge | 15. 00   Sub Total _____ |
| Other | |
| | Grand Total   116.00 |

Mortgage Amt.
1. Basic Tax
2. Additional Tax
Sub Total
Spec./Assit.
or
Spec. /Add.
TOT. MTG. TAX
Dual Town _____ Dual County _____
Held for Appointment
Transfer Tax
Mansion Tax
The property covered by this mortgage is or will be improved by a one or two family dwelling only.
YES _____ or NO _____
If NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist. | 2630513   0200 07400 0600 015000 |
Real Property Tax Service Agency Verification
PTS R VIT A 10-DEC-13

| 5 | Community Preservation Fund |
Consideration Amount $ _____
CPF Tax Due   $ _____
Improved _____
Vacant Land _____
TD _____
TD _____
TD _____

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address
RECORD & RETURN TO:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |
Co. Name
Title #   27169163

| 8 | **Suffolk County Recording & Endorsement Page** |

This page forms part of the attached _____ Assignment of Mortgage _____ made
by: (SPECIFY TYPE OF INSTRUMENT)

Bank of America, N.A.

The premises herein is situated in SUFFOLK COUNTY, NEW YORK.

TO

Nationstar Mortgage, LLC

In the TOWN of BROOKHAVEN
In the VILLAGE
or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

## IMPORTANT NOTICE

If the document you've just recorded is your SATISFACTION OF MORTGAGE, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, *you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.

Local property taxes are payable twice a year: on or before January 10₄ and on or before May 31₄. Failure to make payments in a timely fashion could result in a penalty.

Please contact your local Town Tax Receiver with any questions regarding property tax payment.

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale
Suffolk County Clerk

dw
2/99

Recording Requested By:
Bank of America, N.A.
Prepared By: Anne-Marie Calderon
800-444-4302

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#
Property Address:
31 Brookhaven Drive
Rocky Point, NY 11778-9300
Property Location:
Township of BROOKHAVEN

[C  9/7/2011]

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, Bank of America, N.A., the undersigned holder of the Mortgage described below (herein
"Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant,
sell, assign, transfer and convey unto NATIONSTAR MORTGAGE, LLC whose address is 350 HIGHLAND
DRIVE, LEWISVILLE, TX 75067 all beneficial interest under that certain security instrument described below
together with the note(s) and obligations therein described and the money due and to become due thereon with
interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Original Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GREENPOINT MORTGAGE FUNDING, INC. |
| Made By: | THOMAS MCCARTHY AND MAYRA ORTEGA |
| Date of Mortgage: | 10/20/2006 |
| Original Loan Amount: | $310,000.00 |
| Section: 074.00 | Lot: 015.000   Block: 06.00 |

Recorded in Suffolk County, NY on: 11/8/2006, book M00021414, page 819 and instrument number CX075837

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:
Assigned From: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
GREENPOINT MORTGAGE FUNDING, INC.
Assigned To: BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS
SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP
Recording Date: 3/3/2012 Book/Liber: M00022178 Page: 417 Instrument Number: 12-0025601

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated:
9-17-2013

Bank of America, N.A.

By: _____
    Patricia Quintanilla
    Assistant Vice President

State of California
County of Los Angeles

On __SEP 17 2013__ before me, __Martine F.S. Henry__ , Notary Public, personally
appeared __Patricia Quintanilla__ , who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

MARTINE F.S. HENRY
Commission # 1917150
Notary Public · California
Los Angeles County
My Comm. Expires Jan 12, 2015

Notary Public: __Martine F.S. Henry__          (Seal)
My Commission Expires: __Jan. 12, 2015__

DocID#



**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL. The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

| | |
|---|---|
| Name | : Nationstar Mortgage LLC. |
| Address | : 350 Highland Drive |
| | Lewisville TX  75067 |

**Filing Information:**

| | |
|---|---|
| Tracking Number | : NYS3916287 |
| Mailing Date Step 1 | : 03-DEC-15 12.00.00.000 AM |
| Mailing Date Step 2 | : |
| Judgment Date Step 3 | : |
| Filing Date Step 1 | : 04-DEC-15 12.00.00.000 AM |
| Filing Date Step 1 Orig | : 04-DEC-15 12.00.00.000 AM |
| Filing Date Step 2 | : |
| Filing Date Step 3 | : |
| Owner Occupd at Jdgmnt | : |
| Property Type | : 1 to 4 Family Home |
| Property Address | : 31 BROOKHAVEN DRIVE  ROCKY POINT |
| | NY 11778 ▮ |
| County | : Suffolk |
| Date of Original Loan | : 20-OCT-06 12.00.00.000 AM |
| Amt of Original Loan | : 310000 |
| Loan Number Step 1 | : ▮▮▮▮▮▮ |
| Loan Number Step 2 | : |
| Loan Reset Frequency | : |
| Loan Type | : 1st Lien |
| Loan Details | : Fixed Rate |
| Loan Term | : 30 Year |
| Loan Modification | : No Modification |
| Days Delinquent | : Other |
| Borrower's Name | : MAYRA  ORTEGA |
| Address | : PO BOX 748184 |
| | REGO PARK  11374 ▮ |
| Borrower's Phone No | : ▮▮▮▮▮▮ |
| Filing Status | : Step 1 Completed |

Sincerely,

New York State Department of Financial Services